## In re HOLYWELL CORPORATION, et al., Debtors.

### Bankruptcy No. 84–01590–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

May 8, 1987.

See also 71 B.R. 636.

Fred H. Kent, Jr., Carlton, Fields & Kent, Jacksonville, Fla., for debtors.

Antonio Martinez, Shutts & Bowen, Miami, Fla., special counsel to debtor.

Irving M. Wolff, Holland & Knight, Miami, Fla., for Liquidating Trustee.

Vance E. Salter, Steel Hector & Davis, Miami, Fla., and S. Harvey Ziegler, Kirkpatrick & Lockhart, Miami, Fla., and Thomas F. Noone, Emmet Marvin & Martin, New York City, for Bank of New York.

Raymond Bergan, Williams & Connolly, Washington, D.C., for Miami Center Ltd. Partnership.

John W. Kozyak, Kozyak, Tropin & Throckmorton, Miami, Fla., and Albert I. Edelman, Parker, Chapin, New York City, for O & Y Equity Corp.

Scott D. Sheftall, Floyd, Pearson, Richman, Green, Weil, Zack & Brumbaugh, P.A., Miami, Fla., for Twin Development Corp.

Fred Stanton Smith, Miami, Fla., Liquidating Trustee for the Miami Center Liquidating Trust.

## ORDER ON CLAIM NO. 502

### (MCJV LEASES A AND B TO MCLP)

THOMAS C. BRITTON, Chief Judge.

Claim No. 502 was filed two years ago by Miami Center Joint Venture against the debtor, Miami Center Limited Partnership (hereafter "lessor" and "lessee") for $14,-417,679. It is based upon two May 1981 leases of furnishings, fixtures and equipment specifically purchased to equip the

lessee/debtor's luxury hotel. The leases contain a purchase option. Objections to the claim were heard April 16, 1987. The claim is allowed in the amount of $14,557,-754.

The objectors are the Bank of New York (C.P. No. 811) and the lessee (C.P. No. 1582a). Both challenge the amount of the claim. The claim presumes that these two executory contracts were assumed under the provisions of 11 U.S.C. §§ 365 or 1123(b)(2) and that the option to purchase contained in the leases has been exercised. The Bank's objection accepts these presumptions and disputes only the amount due under the leases. The lessee, however, argues that the leases were rejected as a matter of law and that title to the property remains in the liquidating trustee standing in the lessor's shoes. The liquidating trustee takes the same position. I address first, therefore, the contentions of the lessee and the liquidating trustee.

## Assumption of the Leases and Election to Purchase

The deadline for the assumption of executory contracts in chapter 11 cases is the confirmation of the plan. § 365(d)(2). They may be assumed in the plan. § 1123(b)(2). The confirmation order constitutes approval of the assumption. That is what happened here. The plan directed the liquidating trustee to sell the leased furniture, furnishings and equipment together with the hotel for a total price of $255.6 million with the trustee's warranty of title. The trustee did so. The sale was consummated and the personal property is in the possession of the purchaser where it has been since the October 1985 closing. The assumption became effective on the effective date of the confirmed plan, October 10, 1985.

Section 365(b)(1) provides that if there has been a default in an assumed executory contract, the contract may not be assumed unless:

"at the time of assumption of such contract or lease, the trustee (A) cures, or provides adequate assurance that the trustee will promptly cure, such default; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease."

The objectors argue that the leases have not been assumed because the default was not cured at the time of assumption and remains uncured today.

The provisions quoted above are obviously provided for the benefit of the obligee in the executory contract or lease, in this case the lessor. This benefit may be waived and I find that the lessor has waived its entitlement to prompt cure. This finding is based upon the lessor's conduct since March 1, 1983, the commencement of leases through confirmation in August 1985, to the present.

Lessee has never made a payment and the lessor has never demanded payment. When the lessee filed for bankruptcy in August 1984, lessor could have sought an early election to assume or reject under § 365(d)(2), could have demanded adequate protection under § 361, or could have requested stay relief under § 362(d) to enforce its remedies under the leases. It did nothing.

In April 1985 the lessee/debtor moved for leave under § 365(a) to assume the two leases (C.P. No. 583). The day before the hearing set to consider the motion, the lessor, the lessee, the Bank and Olympia & York (a major creditor of the non-debtor lessor) jointly moved for a postponement of the hearing. (C.P. No. 666). That motion was granted. (C.P. No. 694). The hearing was postponed to the final hearing of Adversary Proceeding 85–0566.

In that action, the Bank sought a determination that the leases were not "true leases" but were security agreements which had never been properly perfected and, therefore, were unenforceable. The parties now before me then agreed that the amount of lessor's claim should not be fixed until the Bank's contention was resolved.

My decision rejecting the Bank's contention in June 1985 (51 B.R. 56) was appealed. It was affirmed by the district court a year later, in June 1986. Both my decision and the district court decision expressly assumed assumption of the leases and the exercise of the purchase option by and through the confirmed plan.

My order of June 1985 set a hearing the next month to fix the amount necessary to cure the lease defaults and to consider the effect of my decision on the then pending chapter 11 plan. All of the parties then and thereafter again urged deferral of the fixing of the cure cost, as well as the lessee's motion to assume, until resolution of the hotly contested issue in the Adversary Proceeding and, thereafter, the equally hotly contested issues presented by the confirmation in August of the Bank's plan.

The confirmation order has since been reviewed by two divisions of the district court. Lessor has been a party to each appeal and has consistently recognized the assumption of the leases, exercise of the purchase option and conveyance of the leased property by the trustee to the purchaser now in possession. The lessor and its major creditor, Olympia & York, have concentrated their attention on plan provisions which they saw as a possible threat to the lessor's eventual recovery of the payment stipulated in the leases. This court has now been directed by the district court to fix the amount due:

> "On remand, the bankruptcy court must resolve two issues. First, the bankruptcy court should determine the value of the lease claim. Then, it should determine the respective interest in this claim held by O & Y and the bankruptcy estate (in lieu of debtor Gould). O & Y and the Bank continue to dispute the interest each party holds concerning the lease claim. The bankruptcy court must determine what effect, if any, the arbitration proceedings have had which would alter the general partners' 50% interests."
> (C.P. No. 1593 (Atkins Memorandum Opinion No. 85–3230 (S.D.Fla. March 24, 1987)).

■ Quite obviously payment to the lessor could not be made before determination of the amount due. The lessor's continued stipulation for and acquiescence in deferral of that liquidation constitutes waiver of its entitlement to prompt cure and its consent to delayed payment. It will not now be heard to deny assumption of the leases, exercise of the purchase option, vesting of title in the trustee and conveyance of that title to the trustee's vendee on the ground that it was not paid promptly. *Lindsey v. Department of Labor (In re Harris Management Co., Inc.)*, 791 F.2d 1412 (9th Cir.1986).

Without question, lessor is entitled to adequate assurance that the trustee will promptly cure the default and pay the purchase option price. The confirmation of the plan constituted a finding of adequate assurance that the trustee could do so. The assets of the substantively consolidated estates of the debtors are now and always have been adequate for that purpose.

Only the reluctance of the trustee's counsel to fix the amount due and marshal the necessary assets to pay the obligation has delayed payment, a delay endorsed by every affected party.

I presume all parties have felt it prudent to await the conclusion of appellate review of the confirmation order before implementing this feature of the plan, although the trustee immediately implemented the rest of the plan and was directed by this court to do so.

The trustee is once again directed to implement the confirmed plan as expeditiously as is possible.

I do not overlook the Order of May 23, 1985 (C.P. No. 696) approving lessee's assumption of the leases at issue here. The ex parte Order submitted by the lessee, is inconsistent with the earlier ex parte Order deferring the issue (C.P. No. 694). The execution of either Order could have been an inadvertent error on my part. I have no independent recollection of either at this date. But both Orders went to all affected parties and have remained unquestioned and unchallenged for two years.

I hold that if the leases were not assumed May 23, 1985, as this record reflects, they were assumed three months later by the confirmed plan and it makes no difference to the rights of any affected party when the assumption occurred.

Nor do I overlook the lessor's exercise on August 8, 1986 (Ex. 10) of its option to exercise, pursuant to paragraph 24(b) of the leases, the lessee's option to purchase the leased property. That election appears justified and effective unless, as I have concluded, this option was exercised a year earlier in the confirmed plan. Once again, as I see it, it makes no difference to the rights of any party when this option was exercised.

The significant effect of these two events is that neither the lessor nor the lessee is now in a position to dispute a finding that the leases have been assumed and the option to purchase has been exercised. All that remains is to fix the amount payable and to make payment. That, of course, is the purpose of this Order.

### The Amount Payable to the Lessor

■ The lessor is entitled to the stipulated rent from March 1, 1983 to October 10, 1985, the effective date of the confirmed plan. Lessor and lessee differ in the calculation of this sum only because the lessee prorates the October rental and the lessor does not. I agree with the lessee and find the rent due to be $6,112,318.

■ The lease stipulates late charges consisting of penalty interest, 4% above the Citibank prime rate. The Bank argues that the lessor has waived or is estopped to claim the penalty interest, relying upon the events I have summarized above. I disagree. There is no inconsistency between lessor's claim of penalty interest and its consent to a delay in the fixing of and the payment of the sums due it. The failure of the lessor to demand and enforce earlier settlement of its account did not mislead or prejudice the Bank, the lessee, the trustee or any other party. I find no basis for waiver or estoppel. The lessor is entitled to interest on the past due rent computed in accordance with paragraph 15 of the leases to the date of payment. That sum calculated through April 1987 is $2,478,818.

The purchase option price is the fair market value of the leased property on the date the option was exercised, October 10, 1985, the effective date of the plan. I find that value to be $4,986,900.

The lessor is entitled under the provisions of paragraph 15 to interest upon the purchase option price from October 10, 1985 to the date of payment. That sum calculated through April 1987 is $979,718.

Adding the foregoing figures, the lessor's claim is allowed in the total amount of $14,557,754 together with interest upon that sum commencing May 1, 1987 to the date of payment in accordance with paragraph 15, that is to say at 4% above the prime rate charged by Citibank.

### The Respective Interests of O & Y and the Trustee in this Claim

Lessor's claim is payable, of course, to Miami Center Joint Venture, a Florida partnership consisting of O & Y and the debtor, Gould. The trustee is vested with all of Gould's property rights and interests to the extent necessary to satisfy the confirmed plan with respect to these substantively consolidated estates. Therefore, the trustee is entitled to and has asserted his right to set off against this obligation of the estate Gould's partnership entitlement to the lessor's claim against the estate. Judge Atkins has directed that this court resolve that issue and has then specified the order in which the assets available to the trustee should be applied to the estate's net obligation to O & Y. Memorandum Opinion No. 85–3230 at p. 18 (March 24, 1987).

The parties, as is characteristic of this case, disagree as to the respective interests of O & Y and Gould. Although several of the parties have argued this issue in this hearing, it is premature in the entry of this Order upon objections to the claim of Miami Center Joint Venture.

The present hearing was scheduled by the court on its own initiative before the release of Judge Atkins' decision. This additional issue was not then anticipated

and no notice has been given that it would be considered at this hearing. I am not certain that all the pertinent facts have been presented. Under the provisions of Bankruptcy Rule 7001, a proceeding:

"to determine the validity, priority, or extent of a lien or other interest in property"

in this court should be presented as an adversary proceeding. The Liquidating Trustee is, therefore, directed to file and serve within 14 days an appropriate adversary complaint presenting to this court the issue directed by Judge Atkins to be resolved in this court. Under the normal practice of this court, the necessary parties may answer and the matter will be scheduled for trial in approximately 30 days after the complaint is filed. I intend to comply with Judge Atkins' directive as promptly as possible.