In re HOLYWELL CORPORATION, Miami Center Limited Partnership, Miami Center Corporation, Chopin Associates and Theodore B. Gould.

Fred Stanton SMITH, as Liquidating Trustee of the Miami Center Liquidating Trust, Plaintiff,

v.

MIAMI CENTER JOINT VENTURE, Olympia & York Florida Equity Corp., O & Y Equity Corp., Theodore B. Gould and The Bank of New York, Defendants.

Bankruptcy Nos. 84–01590–BKC–SMW to 84–01594–BKC–SMW.
Adv. No. 87–0255–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

June 7, 1988.

713

Robert A. Mark, Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, Fla., for debtor.

Theodore B. Gould, Charlottesville, Va., pro se.

Vance Salter, Coll Davidson Carter Smith Salter & Barkett, P.A., S. Harvey Ziegler, Miami, Fla., for Bank of New York.

Robert M. Musselman, New York City, John W. Kozyak, Miami, Fla., for Olympia & York Florida Equity Corp. and The Miami Center Joint Venture.

Herbert Stettin, Miami, Fla., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court upon the Complaint of the liquidating trustee of the Miami Center Liquidating Trust (the "trust") against the Miami Center Joint Venture (MCJV), Olympia & York Equity Corp. and Olympia & York Florida Equity Corp. (O & Y, collectively), Theodore B. Gould (Gould) and The Bank of New York (the "bank") in the nature of a declaratory decree, pursuant to Bankruptcy Rule 7001, to determine an interest in property, and to determine the parties' rights in connection with the marshaling and disbursing of the estate's assets, to wit, the sum of $14,557,754.00 found to be due and owing in accordance with the allowance of Claim 502 filed in these consolidated proceedings by MCJV, and to determine what rights the liquidating trustee has to seek contribution from the bank, and to further determine the rights of the bank in accordance with such contribution and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Facts and Conclusions of Law:

The bank's Amended Consolidated Plan of Reorganization (the "plan") was confirmed on August 8, 1985, and became effective on October 10, 1985, after the debtors failed to supersede the order of confirmation. The confirmation order was affirmed by the district court, 59 B.R. 340 (S.D.Fla.1986), and the 11th Circuit Court of Appeals dismissed an appeal of the order as moot because the plan was substantially consummated. *Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.1988). The plan created a liquidating trust with a provision for the appointment of a liquidating trustee to administer the trust. The plan further provided for the Court to retain jurisdiction of the case to hear and determine the remaining outstanding claims, such as, the 502 lease claim.

Although the confirmation of the bank's plan was subsequently affirmed on appeal, this Court's determination that certain MCJV leases were true leases and the issue of whether MCJV's 502 lease claim should have been equitably subordinated in the plan was appealed to the district court. At the time of confirmation, this Court ordered that the bank guarantee payment, in full, of the MCJV 502 lease claim up to $14,400,000.00 if the bank was unable to obtain a reversal of the true lease decision and the subordination of MCJV's claims was not affirmed. Subsequently, the district court ordered, and the bank posted, a surety bond of $15,000,000.00.

The district court affirmed this Court's true lease ruling and in a subsequent opinion, dated March 24, 1987, reversed that portion of the order of confirmation finding MCJV's claim to be improperly subordinated and remanded the matter for further consideration by this Court. The district court directed that on remand this Court resolve two issues: first, the value the 502 lease claim and second, the respective interests in the claim held by O & Y and the liquidating trust, as the owner of debtor Gould's interest. Furthermore, the district court specified the method of payment of the 502 lease claim as follows: first, from the cash remaining available to the liquidating trustee; second, from any property controlled by the trustee in MCJV, including Gould's interest; and third, from the surety bond provided by the bank to guarantee O & Y's payment under the plan.

Upon remand, this Court, on May 8, 1987, valued the 502 lease claim at $14,557,-

754.00. The Court further directed that the liquidating trustee file and serve, within fourteen days, the instant complaint to determine the respective interests of O & Y and the liquidating trustee in the claim.

MCJV is a general partnership formed in the State of Florida by Gould & O & Y, the general partners. Gould was named the managing venturer upon MCJV's inception. Debtor Miami Center Limited Partnership and MCJV entered into lease agreements involving MCJV's furniture, fixtures, and equipment (FF & E) which are the basis of MCJV's 502 lease claim. Additionally, MCJV owns four vacant lots near the existing Miami Center Project where Gould & O & Y planned to construct two additional phases of the Miami Center. However, disputes arose between the partners which resulted in Gould initiating arbitration proceedings and the postponement of the project. When the Chapter 11 petition was filed the parties were still involved in arbitration which continued after relief from stay was obtained.

The arbitration award was in debtor Gould's favor finding O & Y had breached the Joint Venture agreement and providing Gould with the opportunity to purchase O & Y's interest in MCJV. However, since the award did not delineate alternatives should Gould default on any purchase arrangement he might initiate flowing off the award, the arbitration award was reversed by the United States Court of Appeals for the Second Circuit. *Olympia & York Florida Equity Corp. v. Gould*, 776 F.2d 42, 46 (2d Cir.1985).

Prior to the second circuit's decision and the time the arbiters reconvened, the bank's plan of reorganization was confirmed thereby necessitating the involvement of the liquidating trustee. Once the arbitration proceedings resumed, the parties could not agree to a Final Modified Award and the arbiters advised the liquidating trustee that if no agreement was reached then the proceedings would be dismissed and the prior award vacated.

The liquidating trustee authorized Gould to enter into the arbitration negotiations to settle the differences between MCJV and the trust estate. The liquidating trustee advised the arbiters that he would agree to, and recommend to the Court approval of, a Final Modified Award, provided O & Y unconditionally agreed to make a payment of $6,300,000.00 to the liquidating trustee on or before June 30, 1988. The funds were designated as an advance of a portion of the equity surplus that Gould, as a partner, would likely receive upon liquidation of MCJV's assets in a favorable real estate market. An additional consideration of the settlement by O & Y was its release of a $69,672,518.00 claim against the estate. The above terms were memorialized in a letter agreement dated June 26, 1986 and signed by the liquidating trustee, O & Y and Gould.

The Final Modified Award vests O & Y with the sole discretion whether to dissolve MCJV or retain the MCJV properties for sale or to finance them for development, in whole or in part. The award further provides that MCJV's liabilities shall be paid in the following order of priority: class a—$16,000,000.00 principal amount of the outstanding first mortgage loan which is presently owned by O & Y; class b—(i) payment to O & Y of all advances to MCJV for carrying costs and charges plus interest from March 1, 1984 to December 31, 1985, (ii) payment of all interest payable to O & Y upon advances made by O & Y to MCJV from the inception of the Joint Venture to February 29, 1984, (iii) payment of indebtedness of MCJV to O & Y for future real estate taxes plus interest, (iv) the above subclasses i-iii are payable *pari passu* with payment to Gould of the balance of his return of capital less several enumerated setoffs, (v) the above subclasses i-iii will be increased to the extent of future advances or financing by O & Y for carrying costs and taxes, plus interest; class c—payment to O & Y of the principal amount of O & Y's advances to MCJV less the $16,000,-000.00 mortgage, plus interest; class d—the above indebtedness to O & Y and to Gould, after December 31, 1985, shall bear interest at O & Y's average annual corporate cost of borrowing; and class e—any equity balance, after discharge of the above indebtedness, and all debts to third

parties, will be distributable to O & Y and Gould in equal shares.

## DISTRIBUTION OF THE 502 LEASE CLAIM

The liquidating trustee and the bank argue that the 502 lease claim should be distributed in equal shares between O & Y and Gould. They support their position by referring to the district court opinion, dated March 24, 1987 where, in a footnote, the judge requested that this Court "determine whether the arbitration proceedings had any effect that would alter the general partners' 50% interest." Additionally, they argue that under both § 620.68(1), Fla.Stat. and the Final Modified Award that Gould, therefore the liquidating trustee, and O & Y each own equal shares in MCJV's assets, including MCJV's lease claim.

O & Y's primary argument is that § 620.755, Fla.Stat. should be applied to the distribution of the $14,557,754.00 which provides that all of the partners' interests in capital and equity are subordinate to debts to third parties. Therefore, unless there is an equity surplus available after payments of all of MCJV's debts, the equal shares provision is not applicable. Their secondary argument, which the Court finds to be persuasive, is that even if the priorities listed for debt repayment are followed as designated in the Final Modified Award, the question of an equal shares equity surplus distribution is never reached since the $14,447,754.00 would be depleted after it is applied against the "class a" priority indebtedness which is a $16,000,000.00 mortgage loan.

■ The Court agrees with the bank and the liquidating trustee that O & Y and the liquidating trustee, on behalf of Gould, each own a 50% share in the equity or capital surplus of the MCJV assets and that the arbitration proceeding did not affect that interest. However, the Court finds that the 502 lease claim is owned by the partnership, MCJV, therefore any liquid asset coming into the partnership must be distributed according to the priorities designated in the partnership agreement, or as in this case, the Final Modified Award. The order of priority listed in the Award designates that the "class a" mortgage is to be the first debt paid. Neither the district court order nor the letter agreement modified the terms reached in the settlement that culminated in the Final Modified Award and the Court is compelled to enforce those provisions as agreed to by the parties.

Florida partnership law regarding the priority of debt repayment is not applicable, as argued by O & Y, since the parties entered into a written agreement specifying a different order of priority. § 620.755 Fla.Stat. (1987). Additionally, to find, as argued by the bank and the liquidating trustee, that the 502 lease claim should be divided in equal shares between the partners would require a finding by this Court that the value of the MCJV assets is such that the partners are guaranteed an equity surplus distribution of $14 million dollars. The Court is not in a position to make such a finding, especially in light of the diverse figures it received regarding the value of the properties from the respective parties, ranging from $80 million to $104 million. Additionally, although this Court heard the parties' statements as to value, no appraisal testimony was received, therefore, such a valuation at this juncture would be inappropriate.

Therefore, the Court finds that the $14,557,754.00 claim should be paid to MCJV to be distributed according to the Final Modified Award to the "class a" creditor, O & Y, as the owner of the outstanding first mortgage.

## THE $6,300,000.00 PAYMENT

■ The liquidating trustee agreed to the settlement proposed in the Final Modified Award and entered into the letter agreement with MCJV's partners for the consideration of receiving from O & Y a guaranteed premature capital distribution of $6,300,000.00 on or before June 26, 1988. In addition, O & Y withdrew its substantial claim in the estate. O & Y agreed to pay this sum to the liquidating trustee to obtain the sole discretion as to the disposition of MCJV and its assets.

O & Y argues that the $6.3 million should be distributed according to the priorities established in the Final Modified Award. O & Y further argues that the letter agreement does not definitively state that the liquidating trustee shall receive the entire $6.3 million, but that $6.3 million is the maximum amount he is entitled to receive by June 26, 1988. O & Y argues that if the order of priority found in the Award is followed that first, the remaining amount due on the first mortgage must be paid and second, the liquidating trust, on behalf of Gould will be paid *pari passu* with the other creditors of "class b" resulting in a distribution to the estate of a fraction of the $6.3 million.

After considering the Final Modified Award and the letter agreement as documents designed to compliment one another, the Court cannot accept O & Y's position. If the letter agreement were read as suggested by O & Y, then the liquidating trustee had no incentive to agree to the Final Modified Award's terms since he bargained for the $6,300,000.00 distribution in an effort to marshal liquid assets for the trust within the near future rather then speculate indefinitely on a more favorable market within which to liquidate. Also, O & Y benefited by agreeing to pay the liquidating trustee the money in return for acquiring the exclusive control over the disposition of MCJV's properties, whether it decided to liquidate or carry the properties. Based on the relative positions of the parties at the time the agreements were formulated, the only plausible conclusion is that O & Y guaranteed a $6,300,000.00 payment to the liquidating trustee on or before June 26, 1988.

Furthermore, MCJV was not a party to the letter agreement, only the liquidating trustee, O & Y and Gould were involved. The agreement and the concessions given by the liquidating trustee were to O & Y's benefit, as the primary creditor, not to the partnership. As a result, the order of distribution specified in the Final Modified Award is not applicable since, unlike the 502 lease claim, MCJV is not principally involved and the agreement is between the partners, therefore outside the Award's provisions. Therefore, the Court finds that O & Y is liable to the liquidating trustee for $6,300,000.00 in accordance with their letter agreement dated June 26, 1986.

## METHOD OF PAYMENT

As previously mentioned, the district Court specified in its opinion the method of payment of the claim by the trustee once this Court determines who is entitled to a distribution. The first source of payment will come from the cash which remains available to the liquidating trustee. However, it is probable that there will be no cash available from which the liquidating trustee may pay MCJV after distributions are made to the various creditors, including the administrative claimants. The second source of payment is from any property controlled by the trustee, including Gould's interest in MCJV. With regards to this source of funding, this Court finds that the only control or interest Gould has remaining in the MCJV properties is his residual, possibly illusory, equity surplus right after all of MCJV's debts have been satisfied. The Court finds that this source of funding does not contemplate the forced liquidation of the MCJV's properties which would be in contravention of the Final Modified Award and the letter agreement.

It therefore appears that MCJV's claim will have to be paid through the bank's surety bond. The bank is concerned that payment through the bond will subject it to double payment for the true leases which the bank contends were included within the purchase price it paid for the Miami Center. However, no double payment will occur since the bank will have those remedies provided in the plan, as modified, and as provided in the supersedeas bond. Therefore, the bank is not left unprotected, but has a claim upon which it may anticipate distribution.

In summary, the Court finds that:

1. the $14,557,754.00 MCJV 502 lease claim shall be paid by the liquidating trustee to MCJV for distribution according to the order of priority specified in the Final Modified Award;

2. the method of payment of the 502 lease claim to MCJV by the liquidat-

ing trustee shall be completed according to the district court's opinion, dated March 24, 1987, with the clarification that the liquidating trustee shall pay cash only from funds remaining available after other creditors and administrative claimants have been paid and that the liquidating trustee has no power to force the liquidation of the MCJV properties since, according to the letter agreement, and the Final Modified Award the only control left to Gould is his right to an equity surplus distribution after all MCJV debts are paid at some point in the future. The provisions of the supersedeas bond remain in effect as they relate to the guarantee of payment on the 502 lease claim; and

3. the $6,300,000.00 payment provided in the letter agreement shall be paid by O & Y to the liquidating trustee pursuant to the letter agreement.

A separate Final Judgment of even date has been entered in conformity herewith.