In re HOLYWELL CORPORATION, et al., Debtors.

OLYMPIA & YORK FLORIDA EQUITY CORP., and Miami Center Joint Venture, Plaintiffs–Appellees,

v.

The BANK OF NEW YORK, Defendant–Appellant.

In re HOLYWELL CORPORATION, et al., Debtors.

BANK OF NEW YORK, Plaintiff–Appellant,

Theodore B. Gould, Plaintiff–Appellant–Appellee,

Olympia & York/Miami Center Joint Venture, Plaintiffs–Appellees–Appellants,

v.

Fred Stanton SMITH, As Liquidating Trustee of the Miami Center Liquidating Trust, Defendant–Appellee.

In re HOLYWELL CORPORATION, Debtors.

BANK OF NEW YORK, Plaintiff–Appellant,

v.

Fred Stanton SMITH, As Liquidating Trustee of the Miami Center Liquidating Trust, Defendant–Appellee.

No. 89–5346.

United States Court of Appeals, Eleventh Circuit.

Oct. 2, 1990.

---

and requiring the Bank to pay the amount of this claim together with interest. O & Y and debtor Theodore B. Gould cross-appeal, arguing that the courts below erred in interpreting and giving effect to a post-confirmation agreement between O & Y and the liquidating trustee of the plan. For the reasons set forth below, we affirm.

## GENERAL BACKGROUND

Numerous published decisions have described the complex set of facts in this underlying bankruptcy case. *See, e.g., Holywell Corp. v. Bank of New York*, 59 B.R. 340 (S.D.Fla.1986), *vacated with instructions to dismiss, Miami Center Ltd. Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.1988), *cert. denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988). We therefore detail only those facts pertinent to the resolution of this appeal.

Construction of the Miami Center Project commenced in 1980. The Miami Center Limited Partnership ("MCLP") was the developer of this luxury office, hotel and parking development in downtown Miami. The following year, Gould, a general partner of MCLP, and O & Y formed the Miami Center Joint Venture ("MCJV") to develop a further condominium project adjacent to the one under construction. Under the MCJV partnership agreement, Gould was to act as "managing venturer," Gould and O & Y each owned a fifty percent interest in the partnership's profits and losses, and Gould was entitled to a first priority return of capital. O & Y and Gould also agreed that O & Y would loan MCJV $7,775,000 to acquire furniture, fixtures and equipment ("FF & E") to lease to MCLP for use in the Miami Center Project. This loan was made, the FF & E acquired, and in May, 1981, MCJV entered into two long-term leases of that FF & E to MCLP. MCLP's failure to remit any payments under these leases forms the basis of claim 502, MCJV's $14,417,679 claim against the bankrupt estate.

Vance E. Salter, Barry R. Davidson, S. Harvey Ziegler, Kirkpatrick & Lockhart, Miami, Fla., for Bank of New York.

John W. Kozyak, Kozyak, Tropin & Throckmorton, Miami, Fla., Albert I. Edelman, New York City, for Miami Center Joint Venture, Olympia & York.

Robert M. Musselman, Charlottesville, Va., for Holywell Corp., Miami Center Joint Venture, Chopin.

Theodore B. Gould, Charlottesville, Va., pro se.

Herbert Stettin, Miami, Fla., for Smith.

Before KRAVITCH and COX, Circuit Judges, and DYER *, Senior Circuit Judge.

COX, Circuit Judge:

This appeal involves yet another set of disputes arising from the Chapter 11 reorganization of the five debtors involved in the Miami Center Project. The Bank of New York, the appellant and proponent of the confirmed plan of reorganization, challenges orders of the district court reversing the junior classification and equitable subordination of the lease claims of Olympia & York Florida Equity Corporation ("O & Y") and Miami Center Joint Venture ("MCJV")

---

* Judge David W. Dyer was a member of the panel which heard oral argument but recused himself following oral argument and did not participate in this decision. The case is decided by a quorum. *See* 28 U.S.C. § 46(d).

Serious differences between the joint venturers arose shortly after the formation of MCJV. Pursuant to the partnership agreement, O & Y and Gould submitted the dispute to arbitration. In 1984 the arbitrators entered an award, the effect of which required MCJV's dissolution either through Gould's purchase of O & Y's interest, or in the event Gould did not elect to make such a purchase within a specified time, under the supervision of a receiver appointed by the arbitrators. Gould elected the buyout option. Prior to the closing date of the buyout, however, Gould and his companies filed voluntary Chapter 11 petitions in the Southern District of Florida.

The bankruptcy court modified the automatic stay of proceedings to permit finalization of the arbitration award. O & Y petitioned the District Court for the Southern District of New York to vacate, modify or correct the arbitration award; Gould filed a cross-motion to confirm it. The district court affirmed the award. The Second Circuit reversed, however, on grounds that the award failed to deal explicitly with the contingency that arose in this case—namely, Gould's bankruptcy after election of the buyout option. Finding sufficient evidence of a lack of a "mutual, final and definite award" within 9 U.S.C.A. § 10(d) (1970), the Second Circuit remanded to the arbitrators for a declaration of their intent in the event of this contingency. *Olympia & York Florida Equity Corp. v. Gould,* 776 F.2d 42, 45 (2nd Cir.1985).

Prior to this decision and the time the arbiters reconvened, the plan of reorganization was confirmed, necessitating the liquidating trustee's involvement in the proceedings.[1] Gould and O & Y thereafter negotiated a settlement, which substantially restructured the previous arbitration award. Under this "final modified award," O & Y was the managing partner and venturer of MCJV; MCJV was to be dissolved as determined by O & Y. The Final Modified Award also specified the order of payment of MCJV's liabilities and provided that certain principal items of indebtedness would be paid *pari passu* with repayment to Gould of the balance of his return of capital. In a June 26, 1986 letter agreement entered into in conjunction with this award, Gould, O & Y and the liquidating trustee agreed that "some form of disposition [of MCJV's liabilities] will be determined within two years ... to make accessible to the Liquidating Trustee ... Gould's interest [in his return of capital, to be paid ratably with payment of MCJV's liabilities], to an extent of $6.3 million." In another separate agreement, also made in conjunction with the modified award, O & Y agreed to release over $69,000,000 in claims it filed against the bankruptcy estate. Based on the consent of all parties involved, the arbiters entered the award, and the award was reduced to judgment in Florida state court.[2] O & Y failed to pay this $6,300,000 to the liquidating trustee two years later, giving rise to the liquidating trustee's breach of contract claim.

## STATEMENT OF PROCEEDINGS

As noted above, shortly after the debtors filed their voluntary petitions for reorganization, MCJV filed a proof of claim (claim 502) against debtor MCLP for $14,417,679 for unpaid rent and interest due under the FF & E leases.[3] O & Y, both for itself and for the benefit of MCJV, filed a related proof of claim (Claim 241) for unpaid rent and interest under the same leases. O & Y, both for itself and for the benefit of MCJV, also filed a claim against Gould (claim 251) for Gould's indebtedness to O & Y with respect to MCJV. O & Y subsequently released claims 241 and 251,[4] how-

---

1. The reorganization plan created a liquidating trust with a provision for the appointment of a liquidating trustee to administer the trust.

2. The liquidating trustee also sought approval and ratification of the award from the bankruptcy court. The bankruptcy court denied the motion on grounds that it had abstained from the arbitration matter.

3. MCJV originally filed a proof of claim against MCLP for $15.3 million. On July 3, 1985, MCJV amended this claim to $14,417,679.

4. O & Y, both for itself and for the benefit of MCJV, filed two other proofs of claim against various debtors in the consolidated bankruptcy estate in addition to claims 241 and 251: in the Holywell case, O & Y/MCJV sought $1.7 million

ever, in conjunction with entry of the Final Modified Award.

The plan of reorganization proposed by the Bank of New York provided for a classification scheme by which MCJV's claim 502 and O & Y's claims would be paid *after* the administrative claims, tax claims, and the claims of secured creditors and unsecured creditors not affiliated with the debtors, but prior to the claims of Gould-affiliated creditors and the claims of the debtors themselves. Although the debtors, MCJV and O & Y objected, the plan was confirmed on August 8, 1985 with the overwhelming support of creditors. The debtors failed to post a supersedeas bond to stay the effective date of the plan; on October 10, 1985, the plan was thus implemented. Because the plan's classification of MCJV and the amount of claim 502 was still in dispute as of this date, the Bank of New York executed a funding agreement in which it agreed to advance up to the full amount of claim 502 to the liquidating trustee in the event MCJV's classification was reversed. The trustee, in turn, issued to the Bank a trustee's certificate for the amount of any funds advanced by the Bank pursuant to the funding agreement.[5] Prior to the implementation of the plan, the district court ordered the Bank to file a $15,-000,000 corporate surety bond to provide sufficient protection to MCJV's and O & Y's interests in the event of reversal of the classification scheme on appeal.

O & Y, on behalf of MCJV, appealed the order of the bankruptcy court confirming the plan.[6] Noting that no hearing had been held on the subordination issue, the district court remanded the case to the bankruptcy court with instructions to hold further adversarial hearings and to provide a more detailed discussion of the law and facts. On remand the bankruptcy court conducted a hearing at which the parties agreed that neither desired to offer any evidence. By mutually agreed prior arrangement, the Bank and O & Y submitted proposed findings of fact and conclusions of law. Adopting the Bank's submissions, the bankruptcy court again confirmed the plan, holding that the unique facts and circumstances of MCJV's claim 502 justified its separate classification under 11 U.S.C.A. § 1122 (1979) and its equitable subordination under 11 U.S.C.A. § 510(c) (1979). On appeal, the district court reversed the confirmation order with respect to the subordination of claim 502 and remanded for determinations of the amount of claim 502 and of the respective interests in this claim held by O & Y and the bankruptcy estate (in lieu of Gould). The district court also specified the order in which the assets available to the trustee should be applied to meet this obligation: first, from the liquidating trustee's remaining available cash; second, from any property controlled by the trustee, including Gould's interest in MCJV; and third, from the Bank's surety bond.[7]

On May 8, 1987, pursuant to the district court's remand, the bankruptcy court determined the amount of claim 502 to be "$14,557,754 together with interest upon that sum commencing May 1, 1987 to the

based on Gould's alleged diversion of that amount from parking revenues to another company (claim 362); and in the Miami Center Corporation ("MCC") case, O & Y/MCJV sought $15.3 million under the A & B leases on grounds that MCC was liable for all MCLP debts as general partner of MCLP (Claim 254). These claims were released in conjunction with the entry of the Final Modified Award. Claim 502 was *not* released.

5. This certificate provided that the obligation of the trustee would be a class 1 claim which would have priority of payment from, and which would be secured by, all assets of the debtors' estates after payment of all other class 1 claims and all class 2 through 6 claims filed

by the bar date and allowed by the bankruptcy court.

6. The debtors also appealed the bankruptcy court's confirmation of the plan on other grounds. Another panel of this court ultimately dismissed that appeal as moot. *Miami Center Ltd. Partnership v. Bank of New York,* 838 F.2d 1547 (11th Cir.1988), *cert. denied,* 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).

7. The Bank appealed from this order of the district court. A previous panel of this court dismissed this appeal for lack of jurisdiction. The court reasoned that the district court's order was not final because the amount of claim 502 had not yet been determined.

date of payment in accordance with paragraph 15 [of the lease], that is to say at 4% above the prime rate charged by Citibank." 75 B.R. 793, 796 (S.D.Fla.1987). The bankruptcy court then directed the liquidating trustee to file an adversary complaint to determine the parties' rights in connection with claim 502.[8]

The liquidating trustee thereafter filed a complaint against MCJV, O & Y, Gould and the Bank of New York for declaratory relief on this and other issues. Specifically, the liquidating trustee sought declaratory relief on the following issues relevant to this appeal:

A. A declaration whether or not the liquidating trustee has any property rights in the $14,557,754;

B. A declaration whether the Final Modified Award is governing and binding;

C. A declaration whether or not the Liquidating Trustee is entitled to a 50% credit of the amount allowed to pay Claim 502, and if so, whether or not the Liquidating Trustee may set off the $6.3 million he is to receive on or before June 30, 1988, by virtue of the Final Modified Award and the letter agreement, against that portion of the allowed claim that must be paid to O & Y;

. . . .

E. A declaration that the Liquidating Trust does not have available any unreserved funds with which to pay the $14,557,754 to discharge Claim 502 as allowed ...

The complaint alleged, *inter alia*, that the liquidating trustee owned Gould's partnership interest in MCJV and was entitled to the $6,300,000 under the Final Modified Award and letter agreement. The complaint further alleged that all of the assets of the trust were committed and reserved for other obligations.

On June 7, 1988, the bankruptcy court ruled on the trustee's complaint, holding that O & Y was liable to the liquidating trustee for $6,300,000 in accordance with the June 26, 1986 letter agreement; that claim 502 was to be paid to MCJV to be distributed according to the priorities for debt repayment specified in the Final Modified Award; and that the claim was to be paid from the bank's surety bond. 87 B.R. 712. The bankruptcy court also denied the Bank's oral motion to set off this claim against the $6,300,000 to the liquidating trustee from O & Y. The Bank of New York, O & Y (on behalf of MCJV) and Gould appealed, and the district court affirmed.

## ISSUES ON APPEAL

The Bank of New York raises two issues on appeal. First, it argues that the district court erred in reversing the bankruptcy court's order of confirmation of the plan with respect to claim 502. Second, the Bank contends the courts below erred in denying its motion to set off the $6,300,000 due the liquidating trustee against the Bank's obligation to pay claim 502.[9] Gould and O & Y cross-appeal, arguing the lower courts erred in interpreting and giving effect to the parties' June 26, 1986 letter

---

**8.** The debtors MCJV and O & Y appealed from this decision. The district court affirmed in an unpublished decision. This court affirmed in *In re Holywell Corp.*, 874 F.2d 780 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990).

**9.** The Bank also alleges that the bankruptcy judge and district court erred in holding it liable for the full amount of claim 502, including interest at 4% above the prime rate charged by Citibank. The Bank argues that the funding agreement it executed to the trustee limited its liability to $14,417,679. This argument in essence attacks the May 8, 1987 opinion of the

bankruptcy court, which determined the amount of the claim to be "$14,557,754 together with interest ... at 4% above the prime rate charged by Citibank." 75 B.R. at 796. The debtors, O & Y, and MCJV appealed from that decision, challenging the court's calculations. The Bank was the appellee. The district court and a previous panel of this court affirmed. *See In re Holywell Corp.*, 874 F.2d 780 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990) (holding this issue is moot because the plan has been substantially consummated). Having failed to assert this argument during that appeal, the Bank is precluded from making such an argument now.

agreement.[10] We consider each issue in turn.

## DISCUSSION

### A. CLASSIFICATION AND SUBORDINATION OF CLAIM 502

As noted above, the plan of reorganization confirmed by the bankruptcy court provided for a classification scheme by which MCJV's claim 502 and O & Y's claims would be paid junior in priority to the claims of unsecured creditors not affiliated with the debtors. The bankruptcy court confirmed the plan over the objections of MCJV on grounds that the plan satisfied the requirements of 11 U.S.C. § 1129(a) and (b). Specifically, the court determined that the claims of MCJV and O & Y were not substantially similar to and thus should be classified separately from the claims of other creditors under section 1122 of the Code because any distribution to MCJV would increase Gould's 50 percent equity in MCJV; because MCJV and O & Y had direct, secured recourse by set off against Gould's equity interest in MCJV's real estate, and because the MCJV claim was asserted by a creditor controlled by a debtor. The bankruptcy court held further that the following facts in this case warranted equitable subordination of this claim pursuant to 11 U.S.C. § 510(c) and the standard set forth in applicable case law: Gould had engaged in misconduct, which was imputable to MCJV as a matter of Florida partnership law and agency; O & Y/MCJV was partly responsible for the undercapitalization of MCLP; and O & Y contributed to MCJV's financial difficulties, to other creditors' detriment, by failing to provide financing for phases II and III of the Miami Center Project.

The district court reversed, holding that the claim was not so dissimilar that it should be classified separately under section 1122 and that the evidence was insufficient to satisfy the elements of equitable subordination. The district court determined that any misconduct of Gould was not imputable to MCJV because it was outside the ordinary course and scope of partnership business. The district court also pronounced as clearly erroneous the lower court's findings that O & Y had contributed to MCJV's financial difficulties and that MCLP's undercapitalization was attributable to MCJV.

We note at the outset that we must affirm the factual findings of the bankruptcy court unless they are clearly erroneous. *Birmingham Trust National Bank v. Case,* 755 F.2d 1474 (11th Cir.1985). The test for this court, as well as for the district court, is "not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings." *Highland Village Bank v. Bardwell,* 610 F.2d 228, 230 (5th Cir.1980). Conclusions of law, however, are subject to de novo review. *Machinery Rental, Inc. v. Herpel,* 622 F.2d 709, 713 (5th Cir.1980).

Section 1129 of the Bankruptcy Code provides two mechanisms for confirmation of a Chapter 11 plan of reorganization. The first requires satisfaction of all subsection (a) requirements, including (a)(8), which necessitates acceptance of the plan by all impaired classes or interests. The second mechanism, the mechanism by which the plan was confirmed in this case, incorporates all the requirements of subsection (a), except for (a)(8), and requires that the plan not discriminate unfairly and be fair and equitable with respect to each class of impaired claims or interests that has not accepted the plan.[11] At issue in this appeal is whether the Bank's plan complies with the applicable provisions of title 11, namely section 1122. *See* 11 U.S.C. § 1129(a)(1) (requiring that the plan comply with the provisions of title 11). Also at issue is whether the Bank's plan discriminates unfairly with respect to MCJV, a creditor who is impaired under, and who has not accept-

10. Gould also raises a number of other arguments on appeal. We have considered these arguments and have determined that they are without merit.

11. This second mechanism is referred to as "cram down" because the plan is confirmed over the objections of impaired classes of creditors.

ed the plan. *See* 11 U.S.C. § 1129(b)(1) (requiring that the plan not discriminate unfairly with respect to classes of impaired claims).

■ Section 1122 provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interest of such class." 11 U.S.C.A. § 1122 (1979). The Bank argues that the fact that debtor Gould would benefit from payment of claim 502 by virtue of his interest in MCJV and the fact that MCJV could look to Gould's equity interest in MCJV and in MCJV's property to satisfy claim 502 justify its separate classification under section 1122. We disagree.

■ Although the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case, this discretion is not unlimited. "[T]here must be some limit on a debtor's power to classify creditors ... The potential for abuse would be significant otherwise." *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.,* 800 F.2d 581, 586 (6th Cir.1986); *see also Hanson v. First Bank,* 828 F.2d 1310, 1313 (8th Cir. 1987). If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed. *Teamsters,* 800 F.2d at 586; *Hanson,* 828 F.2d at 1313.

In this case, MCJV's claim 502 is asserted against MCLP for unpaid rent under the FF & E lease agreements. This claim is entirely distinct from O & Y's claim against Gould, claim 251, as the guarantor of MCJV's debt to O & Y. Claim 251 was secured by and could be satisfied by Gould's one-half equity interest in MCJV, as acknowledged in the proof of claim itself. In contrast, claim 502 is an unsecured claim and not subject to setoff. Although the plan placed claims 502 and 251

in the same class, O & Y later released claim 251 in conjunction with entry of the Final Modified Award.

We agree with the district court that Gould will not pocket part of the payment of claim 502, as Gould's interest in MCJV and the rents and profits therefrom became part of the bankruptcy estate upon commencement of the case. 11 U.S.C. § 541(a). We also agree that the fact that claim 502 is in part an equity interest does not justify its subordination. *See In re Martin's Point Limited Partnership,* 12 B.R. 721, 727 (Bankr.N.D.Ga.1981) ("[A] valid claim of a creditor who is also an equity security holder is not to be subordinated to the claim of a creditor who is not also an equity security holder, but is to be treated equally.") The facts in this case thus do not warrant separate classification under section 1122.

■ The facts in this case similarly do not warrant equitable subordination of claim 502 under 11 U.S.C. § 510(c). Section 510(c) provides that claims against the bankrupt estate may be subordinated to the claims of other secured or unsecured creditors if the "principles of equitable subordination" so dictate. Under our precedent, the proponent of the plan must demonstrate the following three elements to accord a claim inferior priority under section 510(c):

(1) that the claimant had engaged in inequitable conduct;

(2) that the conduct has injured creditors or given unfair advantage to the claimant; and

(3) that subordination of the claim is not inconsistent with the Bankruptcy Code.

*Estes v. N & D Properties, Inc.,* 799 F.2d 726, 731 (11th Cir.1986). If the claimant is an insider, as in the instant case,[12] the proponent has the burden of presenting material evidence of unfair conduct. *Id.* The burden then shifts to the claimant to prove the fairness of his transactions with

---

**12.** In cases where the debtor is an individual, the Bankruptcy Code defines as an insider "the partnership in which the debtor is a general partner." 11 U.S.C.A. § 101(30)(A)(ii) (West Supp.1990). Neither party contends on appeal that MCJV is not an insider for purposes of equitable subordination.

the debtor or the claim will be subordinated. *Id.*

■ The Bank argues on appeal that Gould engaged in inequitable conduct and that the bankruptcy court correctly imputed this conduct to MCJV, thus justifying the subordination of claim 502. We again disagree. Under Florida partnership law, a partnership is bound by a partner's wrongful acts if "a partner acting in the ordinary course of the business of the partnership or with the authority of his copartners" causes loss or injury to a third party. *Fla. Stat.Ann.* § 620.62 (1977). The district court correctly determined that Gould's misconduct cannot be used to subordinate claim 502 because the misconduct at issue was outside the scope of the partnership business. Indeed, Gould's alleged misconduct was *against* the interests of MCJV and O & Y.

## B. $6,300,000 CLAIM

Gould and O & Y argue that the bankruptcy and district courts erred in holding O & Y liable to the liquidating trustee for $6,300,000 pursuant to the parties' June 26, 1986 letter agreement. The bankruptcy court held that O & Y guaranteed this payment to the liquidating trustee in consideration for the trustee's agreement to the Final Modified Award, which gave O & Y the sole discretion to dispose of MCJV and its assets. The court then rejected O & Y's argument that this payment should be distributed according to the priorities set forth in the Final Modified Award. Because the agreement was made between O & Y and the liquidating trustee, the claim was to be paid to the liquidating trustee. The district court affirmed on appeal, holding that the trustee acquired Gould's interest in MCJV upon commencement of the case, and that the bankruptcy court properly retained jurisdiction to approve the settlement of any dispute over assets of the bankrupt estate.

■ On appeal to this court O & Y and Gould argue that the bankruptcy court

lacked jurisdiction over this dispute because it was based on a post-confirmation contract between the trustee and an independent entity. They argue that the claim is subject to a plenary trial under state law. O & Y additionally argues that if the district court correctly determined that the liquidating trustee succeeded to Gould's interest in MCJV upon commencement of the case, then the trustee is subject to the affirmative defense that it is liable for its portion of the partnership's carrying costs.[13]

■ We affirm the lower court's resolution of this issue and hold that the bankruptcy court properly exercised jurisdiction over this matter. Section 541 of the Bankruptcy Code provides that "all legal or equitable interests of the debtor" become part of the estate upon filing a petition for bankruptcy. 11 U.S.C.A. § 541 (1979). Section 541 is construed broadly, so as to effectuate Congressional intent that a wide range of property be included in the estate. *In re May*, 83 B.R. 812, 814 (Bankr.M.D. Fla.1988); *see also In re Ryan*, 15 B.R. 514, 517 (Bankr.D.Md.1981). Upon Gould's filing of the petition, his interest in MCJV became part of the bankrupt estate. The bankruptcy court retained jurisdiction to approve the trustee's settlement of a dispute concerning this asset of the trust. 11 U.S.C. § 1142(b); Bankruptcy Rule 3020(d). Moreover, we agree with the court below that this is a "core proceeding" under 28 U.S.C. § 157(b), as it is a "matter concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). *See In re Arnold Print Works*, 815 F.2d 165 (1st Cir.1987) (holding that a debtor-in-possession's legal action to collect an account receivable, arising out of a contract made *after* the debtor was in bankruptcy was a "core proceeding" because it was a "matter concerning the administration of the estate" under section 157(b)(2)(A)).

## C. SET OFF

The Bank also argues on appeal that the courts below erred in denying its motion to

---

**13.** O & Y has waived any affirmative defense it may have as to the trustee's liability for the MCJV's "carrying costs" by failing to assert it in

its pleadings. *Equal Employment Opportunity Comm'n v. White & Son Enterprises*, 881 F.2d 1006 (11th Cir.1989).

set off its obligation to pay claim 502 against the $6,300,000 owed to the liquidating trustee. This argument is without merit. The lower courts correctly determined that claim 502 is to be paid to MCJV to be distributed according to the priorities fixed in the Final Modified Award. The courts below also correctly determined that O & Y is liable to the liquidating trustee for $6,300,000 pursuant the parties' June 26, 1986 letter agreement.

AFFIRMED.