[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13936
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cv-00212-WS-CAS,
BKCY No. 4:019-bk-41174-LMK

In Re:   WILLIAM ARTHUR THOMAS, III,

Debtor.

_____

WILLIAM ARTHUR THOMAS, III,

Defendant-Appellant,

versus

THERESA M. BENDER,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 16, 2013)

Before HULL, JORDAN, and EDMONDSON, Circuit Judges.

PER CURIAM:

William Arthur Thomas, III, a Chapter 7 debtor, appeals the district court's affirmance of the bankruptcy court's grant of summary judgment in favor of the bankruptcy estate's trustee, Theresa M. Bender ("Trustee"). The Trustee filed this action against Thomas, seeking the proceeds of a post-petition real estate sale that arose from a pre-petition option contract. No reversible error has been shown; we affirm.

Thomas is a real estate investor who was involved in "flipping" distressed properties for profit. In September 2009, Thomas entered into an option contract that gave him the right to purchase real property from Craig Mobley ("Mobley") for $112,450. The principal balance of Mobley's mortgage with Wells Fargo Bank was $220,000. The mortgage was facing foreclosure.

Thomas and Mobley also signed a Short Sale Master Agreement in which they agreed that Thomas would use reasonable efforts to negotiate a short sale with Wells Fargo. The parties agreed that "[i]n the event that [Thomas] is successful in obtaining a Short Sale, then [Thomas] intends to sell the property and profit from the

2

difference between the Short Sale payoff amount and the amount of the sale to a third party."   And, "[i]f [Thomas] is unsuccessful for any reason in obtaining a Short Sale and/or selling the Property for a profit, then the Property will likely go to foreclosure."

After recording the option contract, Thomas collected and gave Mobley's financial information to Paul Elya and Ed Garcia, third-party negotiators responsible for negotiating a short sale price with Wells Fargo.   Wells Fargo ultimately agreed to release Mobley's mortgage for $130,000.

On 20 February 2010 -- after Thomas filed for bankruptcy -- Thomas entered into a contract ("sales contract") to sell Mobley's property to Greg May and Amelia Rosseter ("May") for $179,000.   On 16 March 2010, Thomas exercised his option and bought Mobley's property for $130,000.   Then, on 12 April 2010, Thomas sold the property to May, who was represented by a realtor.   Thomas received $30,839.13 in cash at the closing ("sales proceeds").   Thomas later paid Elya and Garcia over $22,000 for their services.

The Trustee filed an action against Thomas, seeking the proceeds of Thomas's post-petition real estate sale.   The bankruptcy court granted the Trustee's motion for summary judgment, concluding that the sales proceeds constituted

3

property of Thomas's bankruptcy estate.   The district court affirmed the bankruptcy court's decision.

We review the bankruptcy court's entry of summary judgment de novo, and we "view all evidence and make all reasonable inferences in favor of the party opposing summary judgment."   Gray v. Manklow (In re Optical Techs., Inc.), 246 F.3d 1332, 1334-35 (11th Cir. 2001).   The party opposing summary judgment must set forth specific facts showing the existence of a genuine issue of material fact. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).

Section 541 of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).   "Section 541 is construed broadly, so as to effectuate Congressional intent that a wide range of property be included in the estate." Olympia & York Fla. Equity Corp. v. Bank of New York (In re Holywell Corp.), 913 F.2d 873, 881 (11th Cir. 1990).

"[W]hether a debtor's interest constitutes property of the estate is a federal question," but we look to state law to decide whether the debtor had a legal or equitable interest in the property when he filed for bankruptcy.   Bracewell v. Kelley (In re Bracewell), 454 F.3d 1234, 1243 (11th Cir. 2006).   Under Florida law, Thomas's pre-petition option contract -- which was supported by valid consideration

4

and duly recorded -- gave Thomas a valid legal interest in Mobley's property.   See

Barry v. Ippolito (In re Savel), 29 B.R. 858, 860 (Bankr. S.D. Fla. 1983).   As a

result, the option contract constituted property of the estate under section 541(a)(1).

The bankruptcy estate's property also encompasses the "[p]roceeds, product,

offspring, rents, or profits of or from property of the estate, except such as are

earnings from services performed by an individual debtor after the commencement

of the case."   11 U.S.C. § 514(a)(6).   We agree with the bankruptcy court that the

sales proceeds constituted proceeds of the option contract and, thus, were also

property of the estate.

Thomas argues that, because the sales proceeds resulted directly from the

post-petition sales contract, they cannot be considered proceeds of the pre-petition

option contract.   But both the sales contract and the option contract were necessary

components of Thomas's overall scheme to "flip" the Mobley property.   As

evidenced by the Short Sale Master Agreement, both parties contemplated that

Thomas would execute the option contract only if he first was able to obtain a short

sale and to sell the property to a buyer for a profit.

Relying in part on our decision in Bracewell, Thomas argues that the

connection between the sales proceeds and the option contract was too attenuated for

the sales proceeds to be considered proceeds of the option contract.   But this case is

different from Bracewell, where we affirmed the bankruptcy court's conclusion that a disaster payment for pre-petition crop losses -- authorized by post-petition legislation -- was no part of the bankruptcy estate.   See Bracewell v. Kelley (In re Bracewell), 454 F.3d 1234 (11th Cir. 2006).   Unlike the debtor in Bracewell, Thomas had more than a mere "hope, a wish and a prayer" that he might profit from the Mobley option contract.   The option contract gave Thomas a valid legal interest in Mobley's property, and Thomas was in a position to affect the outcome of the complete deal.   Although only a small portion of Thomas's various option contracts yielded a profit, that was the nature of Thomas's business model; and that circumstance does not render the sales proceeds too remote to be considered proceeds of the option contract.

We also reject Thomas's argument that the sale proceeds were earned only as a result of his post-petition services and, thus, are excluded from the estate's property under section 541(a)(6).   Section 541(a)(6) "excepts from proceeds of the estate only those earnings generated by services personally performed by the individual debtor."   Fitzsimmons v. Walsh (In re Fitzsimmons), 725 F.2d 1208, 1211 (9th Cir. 1984) (emphasis added) (concluding that, "[t]o the extent that the law practice's earnings are attributable not to [the debtor's] personal services but to the business' invested capital, accounts receivable, good will, employment contracts

6

with the firm's staff, client relationships, fee agreements, or the like, the earnings of the law practice accrue to the estate.").

Viewing the evidence in the light most favorable to Thomas, Thomas has failed to identify what post-petition services he performed personally on this deal. Thomas's main role in the deal was to work with Mobley to obtain the option contract and to collect Mobley's financial information, all of which Thomas completed pre-petition.   Thomas asserts that he was also responsible for raising capital to fund the deal, but nothing evidences that he in this case did so post-petition.   Thomas assigned the task of negotiating the short sale with Wells Fargo to Elya and Garcia.   Thomas also relied on a licensed realtor to list the property for sale and to locate a buyer for the property.   Because the post-petition portions of the "flipping" scheme were performed by third parties -- and not by Thomas himself -- the sales proceeds are not exempted under section 541(a)(6).   De minimis acts are insufficient.

Thomas argues that -- even to the extent the sales proceeds are deemed property of the estate -- only the amount that he actually received ($30,839.13 minus the $22,000 paid to Elya and Garcia) should be turned over to the Trustee.   We see no error in the bankruptcy court's declaring that the full $30,839.13 amount was part

7

of the bankruptcy estate.[*]    The sales proceeds constituted property of the estate at the moment of the sale.   That Thomas later used a portion of these funds to pay Elya and Garcia does not change this fact.

No genuine issue of material fact exists; for the reasons set out in its order, the bankruptcy court properly granted the Trustee's motion for summary judgment.

AFFIRMED.

---

[*] We note that the bankruptcy court did not address this argument directly because Thomas raised it for the first time in his appeal to the district court.