**In re EQUITABLE DEVELOPMENT CORP. d/b/a EDC–Mobile, Inc., Debtor.**

**Bankruptcy No. 95–12119.**

United States Bankruptcy Court, S.D. Alabama.

May 28, 1996.

Henry Callaway, Mobile, AL, for Movant.

Lawrence B. Voit, Mobile, AL, for Debtor.

## ORDER

WILLIAM S. SHULMAN, Bankruptcy Judge.

This matter is before the Court on the Motion of Chemical Bank as Trustee for relief from the automatic stay pursuant to 11 U.S.C. § 362(a) or to dismiss case. Appearances were as noted in the record. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). For the reasons indicated below, the Court is granting the Motion for relief from stay.

## FINDINGS OF FACT

This is a single asset real estate case comprised of a budget motel located on Highway 90 in Daphne, Alabama. The motel originally opened in 1988 as a "Knights Inn" motel. When its parent corporation filed bankruptcy, the motel was foreclosed upon by Chemical Bank's predecessor, whose debt was $2.5 million. The debtor purchased the motel after foreclosure in 1990 for $2,250,000.00 with ten percent down and the balanced financed by a five year, non-recourse balloon note to the seller. The note is secured by the debtor's real property, including rents, inventory, furniture, furnishings, equipment and revenues. Interest rose each year from 8.5% for year one, to 11% for years four and five.

The note ballooned in February 1995 and the parties were unable to work out a suitable refinancing agreement. Chemical Bank scheduled a foreclosure sale for August 17, 1995. The debtor filed a Chapter 11 petition on August 16, 1995. Trade payables were current at the time of the filing. Other than the Chemical Bank debt, the only other debts are 1995 taxes in the amount of $24,392 and trade debt in the amount of $26,988. The debt to Chemical Bank is approximately $2.3 million.

The value of the collateral ranges from $1.047 million to $1.75 million, depending upon which parties' appraisal is accepted. The debtor's proposed plan values the collateral at $1.2 million. There is no dispute that the debtor has no equity in the subject property. Under any value, Chemical Bank is an undersecured creditor with a general unsecured claim of at least $500,000.00.

The debtor filed a Plan of Reorganization on November 13, 1995. To date, no Disclosure Statement has been filed nor have any other steps been taken to have the plan confirmed. The plan establishes five classes of claims or creditors: 1) Chemical Bank's secured claim valued at $1.2 million, amortized over 30 years at 9% fixed interest with a five year balloon; 2) unsecured priority tax claims totalling $24,400 paid in six annual payments with 5% interest; 3) unsecured trade claims totalling $27,000 paid 20% in ten consecutive semi-annual payments, without interest; 4) Chemical Bank's unsecured deficiency claim, which would be approximately $1.1 million under debtor's proposed plan, paid the same as the unsecured trade claims, 20% in ten consecutive semi-annual payments; 5) shareholders to retain their share and make capital contributions of $10,000.00 per month for ten months for deferred maintenance and repairs.

While the unsecured trade debt and Chemical Bank's deficiency claim are classified separately, the proposed treatment is the same. The debtor's president testified that the claims were classified separately because the trade debt was generally payable over a short period of time and was relatively small in amount while the unsecured claim of Chemical Bank arose from a long term obligation and was considerably larger in amount. No evidence of a business reason or other justification was offered for the separate classification. Classes one, three, and four are impaired.

The owners of the debtor are Kay Brewer and Ted George. Mrs. Brewer's husband,

Bill Brewer, is the president of the debtor. They own several other motels and hotels in the Southeast. During the one year preceding bankruptcy, the debtor paid $90,000 to its shareholders, including $10,576.95 paid within the two weeks immediately preceding the bankruptcy filing. No attempt has been made to collect these transfers nor has any provision been made for their collection in the debtor's proposed plan.

During the period of time that the debtor has been in possession of the property it has deferred any upgrade and/or renovation other than minimal routine maintenance. No replacement reserves, i.e., money set aside for future replacement of furniture, fixtures, or equipment, have been budgeted for six years. The debtor's own appraisal indicates that rooms have been "cannibalized" to make repairs to other rooms, thus reducing the number of rooms available for use. The debtor's president testified that the owners realized that they would have to put in more than the proposed $100,000 capital contribution to bring the motel up to par to compete with the competition and make the plan succeed; however, at the hearing he would not commit to a definite higher amount. He also testified that upgrades and some routine maintenance had been purposefully deferred to see if refinancing would occur at the end of the balloon period since they did not want to lose any investment in the event the loan was not refinanced and they lost the property. Additionally, during the pendency of the bankruptcy, the debtor has stopped all advertising efforts.

Using the debtor's proposed plan payments and its appraisers net operating income projections based on a valuation of $1.2 million contained in the proposed plan, the yearly payments to be paid by the debtor total approximately $165,000, while available projected income would be approximately $123,000 in year one (including the proposed $100,000 capital contribution), $73,000 in year two, $140,000 in year three, $175,000 in year four, and $212,000 in year five. Not until years four and five would the debtor make enough money to fund its proposed plan.

In the event Chemical Bank chooses its 1111(b) election alternative, it would have a secured claim for approximately $2,276,456. If paid over five years, the monthly payment to Chemical Bank alone would be approximately $34,941; paid over ten years, the monthly payment would approximate $18,970; and over 15 years, $12,647. Under the proposed plan with no 1111(b) election, the total monthly secured and unsecured payments to Chemical Bank equate to $12,768, an amount which, as shown above, can't be met during the first three years.

Chemical Bank has objected to its treatment under the proposed plan and has stated that it wants the property back and will not vote in favor of any plan. It seeks relief from the automatic stay under any one of three alternative theories contained in 11 U.S.C. § 362(d).

### CONCLUSIONS OF LAW

Section 362(d)(2) of the Bankruptcy Code provides that the court shall grant relief from stay if there is no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). As has already been indicated, it is undisputed that there is no equity. The burden of proof as to the necessity of the property for an effective reorganization is upon the debtor. 11 U.S.C. § 362(g).

The Supreme Court has held that the requirement that the property be "necessary to an effective reorganization" means not that the property is needed if there is to be an effective reorganization, but that it is necessary to an effective reorganization *that is in prospect*. There must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Savings Association v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376–77, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988).

In order to have a successful reorganization you must first have a confirmed plan. In order to have the proposed plan confirmed where there is an impaired class of claims, at least one class of impaired claims must accept the plan. 11 U.S.C. § 1129(a)(10). The impaired classes in this case are classes one, three, and four. Classes one and four are Chemical Bank's

secured claim and unsecured deficiency claim respectively. Class three is composed of the unsecured trade debt. As previously stated, Chemical Bank has indicated its rejection of the proposed plan and has affirmatively stated that it will reject all plans as it wants the property back. This leaves only class three which can accept the plan and force confirmation. However, after a thorough review of applicable case law, this Court concludes that in this case the separate classification of the unsecured trade debt and Chemical Bank's unsecured deficiency claim is impermissible.

■ Section 1122 of the Bankruptcy Code, which governs classification of claims, provides among other things that claims or interests may be classified together only if such claims or interests are "substantially similar" to each other. 11 U.S.C. § 1122(a). While the aggregating of dissimilar claims in the same class is barred, the section does not specifically address whether similar claims must be classified together. This issue has yet to be addressed by the Eleventh Circuit and there is a split among the six circuit courts which have faced it. The Eleventh Circuit has stated the general rule:

> Although the proponent of a reorganization has considerable discretion to classify claims in interests according to the facts and circumstances of the case, this discretion is not unlimited. "[T]here must be some limit on a debtor's power to classify creditors ... the potential for abuse would be significant otherwise." If the plan unfairly creates too many or too few classes, *if the classifications are designed to manipulate class voting,* or if the classification scheme violates basic priority rights, the *plan cannot be confirmed.*

*In re Holywell Corporation,* 913 F.2d 873, 880 (11th Cir.1990) (citations omitted) (emphasis added).

Of the six circuit courts addressing the issue, five of them "have generally held that separate classification of similar claims is permissible only upon proof of a legitimate reason for separate classification, and that separate classification to gerrymander an affirmative vote is impermissible." *Boston Post Road Ltd. Partnership v. FDIC (In re Boston Post Road Ltd. Partnership),* 21 F.3d 477, 481 (2nd Cir.1994) *cert. denied,* — U.S. ——, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995); *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.,* 987 F.2d 154 (3rd Cir.1993); *Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),* 961 F.2d 496 (4th Cir.1992) *cert. denied,* 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *Lumber Exch. Bldg. Ltd. Partnership v. Mutual Life Ins. Co. (In re Lumber Exch. Bldg. Ltd. Partnership),* 968 F.2d 647 (8th Cir.1992); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III),* 995 F.2d 1274 (5th Cir.1991), *cert. denied,* 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992).

The facts in the Fifth Circuit case are similar to those in the instant case before the Court. In *Greystone III,* an undersecured creditor's $3,500,000 Code-created deficiency claim was classified separately from the $10,000 in unsecured trade debt. The plan proposed to pay both classes approximately 4% of their claims, i.e., they were afforded the same treatment. No reasons, business or otherwise, were offered by the debtor's witnesses at the confirmation hearing for the separate classification. In reversing confirmation and rejecting all arguments offered by the debtor, the Fifth Circuit concluded that a debtor's ability to achieve cramdown of a reorganization plan should not be preferred over a creditor's right to elect recourse status and obtain a right to vote in the unsecured class; separate classification of an unsecured deficiency claim of an undersecured creditor and of the unsecured trade claims for purposes of confirming a reorganization plan was not justified by "good business reasons" where the trade claims and the undersecured creditor were treated identically under the plan; and even if the plan had treated the trade claims and the undersecured claim differently, separate classification would still have been improper where no reason for such classification was offered by witnesses at the confirmation hearing, and no evidence was presented of an inability to obtain trade goods if trade creditors did not receive preferential treatment. 995 F.2d, at 1279–1281. As noted previously, no legitimate reasons have been offered by the debt-

or in the instant case for the separate classification of Chemical Bank's undersecured claim and the trade debt.

The Court is aware that there is some authority supporting the debtor's position, argued by counsel, that the legal distinction between the holder of an 1111(b) claim and the holder of a general unsecured claim is sufficient in and of itself to justify separate classification. *See, e.g., Matter of Woodbrook Associates,* 19 F.3d 312 (7th Cir.1994); *In re Gato Realty Trust Corp.,* 183 B.R. 15 (Bankr. D.Mass.1995); *In re SM 104 Ltd.,* 160 B.R. 202 (Bankr.S.D.Fla.1993). However, *Woodbrook* appears to be limited, at least for the time being, to partnership debtors where recourse would exist against the principals as opposed to corporate debtors with a non-recourse loan. 19 F.3d, at 319. As pointed out in the preceding paragraphs, this legal distinction has been rejected as the sole basis for separate classification by the majority of circuits considering the issue. *Boston Post Road* 21 F.3d, at 483; *Route 37 Business Park Assocs.,* 987 F.2d, at 161; *Bryson Properties, XVIII,* 961 F.2d, at 502; *Lumber Exchange,* 968 F.2d, at 649; *Greystone III,* 995 F.2d, at 1279.

■ Further, this Court rejects the apparent conclusions of *Gato* and *SM 104* that a debtor ought to be able to isolate an impaired assenting class in order to achieve confirmation if that is the only way a plan can be confirmed. 183 B.R., at 22–23; 160 B.R., at 217. To the contrary, this Court agrees with the reasoning articulated in *Boston Post Road* that "approving a plan that aims to disenfranchise the overwhelmingly largest creditor through artificial classification is simply inconsistent with the principles underlying the Bankruptcy Code. A key premise of the Code is that creditors holding greater debt should have a comparably greater voice in reorganization. . . . Chapter 11 is far better served by allowing those creditors with the largest unsecured claims to have a significant degree of input and participation in the reorganization process, since they stand to gain or lose the most from the reorganization of the debtor" 21 F.3d, at 483. Thus, as stated above, this Court holds that separate classification of claims solely to create an impaired class that will assent to the plan is impermissible; there must be credible evidence of a legitimate reason for such separate classification. *See generally, In re Elmwood, Inc.,* 182 B.R. 845 (Bankr.D.Nev.1995) and *In re Eddington Thread Mfg. Co., Inc.,* 181 B.R. 826 (Bankr.E.D.Pa.1995) (examples of cases containing legitimate reasons for separate classification).

■ The debtor next argues that even if it must classify Chemical Bank's unsecured deficiency claim in the same class as the trade debt, it can still obtain confirmation of its plan through cramdown by obtaining the affirmative vote of the class of priority creditors whose claims will be paid in full over six years. The debtor relies on the case of *In re Atlanta–Stewart Partners,* 193 B.R. 79 (Bankr.N.D.Ga.1996) to support this theory. While the holding in *Atlanta–Stewart* may be correct, it is not applicable in this case. The class of claims deemed to be impaired and thus entitled to vote acceptance of the plan in that case was comprised of non-administrative, general unsecured claims whose individual claims were less than $1,000. However, in the instant case, the debtor seeks to deem the administrative priority tax claimants to be impaired and allow them to vote acceptance of the plan. This class does not constitute a voting class of creditors for purposes of effecting cramdown. This class is composed of administrative claims defined as priority claims under 11 U.S.C. § 507(a)(8) that must be paid in full pursuant to 11 U.S.C. § 1129(a)(9)(C). Holders of such claims are not referred to as a class by the Code and are not entitled to vote on a plan of reorganization. The 1994 Amendments to 11 U.S.C. § 1124, wherein subsection three was eliminated, did not affect who constituted a voting class. As succinctly stated in *Bryson Properties,* "priority tax claimants, which receive preferential treatment under § 1129(a)(9)(C), are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down." 961 F.2d, at 501. *See also, Boston Post Road,* 21 F.3d, at 484 and *Greystone III,* 995 F.2d, at 1281 (holders of § 507(a)(1) administrative lease claims not entitled to vote); *In re Perdido Motel Group, Inc.,* 101 B.R. 289 (Bankr.N.D.Ala.1989)

(§ 507(a)(8) priority tax claimants not entitled to vote); *In re Winters*, 99 B.R. 658 (Bankr.W.D.Pa.1989) (whether paid in full or paid a lesser amount by agreement, priority tax creditors are not an impaired class for purposes of cramdown). Accordingly, the debtor will not be allowed to use the class of priority tax creditors to provide the needed acceptance of its proposed plan.

■ Finally, even if the debtor could separately classify Chemical Bank's claim or count the priority tax claimants as assenting voters thus assuring an accepting, impaired class (assuming the trade creditors accepted the plan), the debtor still could not achieve confirmation of a plan that it could perform. According to the debtor's own projections of net operating income, it cannot make its own proposed plan payments. Further, even if Chemical Bank chooses the § 1111(b) election, the debtor cannot make sufficient payments unless the plan is carried out to at least more than 15 years. Such a proposition on property that the appraisers placed only 18 more years of economic life would not be feasible or profitable for the debtor's shareholders and would not be in the best interest of all the creditors. Additionally, this case is over nine months old with an unconfirmable, proposed plan pending for over six months. This Court sees no reasonable possibility of confirmation and accordingly grants Chemical Bank's motion for relief from stay.

Because relief from stay is being granted pursuant to 11 U.S.C. § 362(d)(2), the Court finds that it is not necessary to determine the merits of relief under §§ 362(d)(1) or (3) or to address Chemical Bank's motion to dismiss. However, the Court will dismiss the case if the debtor has not, within 30 days of the date of this Order, either converted or dismissed the case itself or filed a Disclosure Statement and an Amended Plan of Reorganization which deals with its remaining debts.

### ORDER

ORDERED, that the Motion of Chemical Bank as Trustee for relief from the automatic stay of 11 U.S.C. § 362(a) be, and it hereby is, GRANTED; and it is further

ORDERED, that the debtor shall have thirty days from the date of this Order to submit a Disclosure Statement and an Amended Plan of Reorganization dealing with its remaining debts or to dismiss or convert its Chapter 11 case failing which the case shall be dismissed.