**IN RE Jimson Tunde AKINPELU and Olayinka Alade Akinpelu, Debtors.**

**CASE NUMBER 13–60166–MGD**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Signed May 1, 2015

Filed May 4, 2015

Michael D. Robl, The Spears & Robl Law Firm, LLC, Tucker, GA, for Debtors.

## ORDER DENYING CONFIRMATION OF PLAN

Mary Grace Diehl, U.S. Bankruptcy Court Judge

This case presents two issues of first impression in the Eleventh Circuit: (1) whether separate classification of unsecured claimants is permissible in a Chapter 11 plan of reorganization in order to create an impaired, consenting class as required by 11 U.S.C. § 1129(a)(10); and, (2) whether the absolute priority rule is

applicable post-BAPCPA[1] in Chapter 11 cases where the debtor is an individual. These issues arise in connection with the Amended Proposed Combined Plan of Reorganization and Disclosure Statement of Debtors named above as filed in this case on December 21, 2014 (Docket No. 94). The Court held a hearing on confirmation on February 5, 2015, at which time objections were asserted by the United States Trustee as well as an unsecured creditor, Auto–Owners Insurance Company ("Auto–Owners") (collectively referred to as the "Objectors"). At the hearing, the Court requested briefs setting forth additional authority on the two specific legal issues set forth above.

The Court has considered the briefs as filed along with the record in connection with this matter and upon review of same, finds and concludes that Debtors' plan impermissibly classifies the unsecured deficiency claim of Auto–Owners and further, that the plan violates the absolute priority rule. Therefore, confirmation will be denied.

## I. Classification of Auto–Owners' Unsecured Claim In Debtors' Plan

■ To confirm Debtors' plan, the Court must determine that both the plan and its Debtor-proponents have fully complied with the requirements of Section 1129 of the Bankruptcy Code. *See* 11 U.S.C. § 1129. Under Section 1129(a)(1), the plan must comply with "applicable provisions" of the Code including Sections 1122 and 1123. In particular, Section 1122(a) governs the classification of claims, and while it does not require that all substantially similar claims be placed in the same class, it does require that all claims or interests placed in a specific class be "substantially similar." Debtors' plan treats the holders of general unsecured claims through three sub-classes, to wit; Class 2(a) "Small Claims," Class 2(b) "[Other] General Unsecured Claims," and, Class 2(c) "Special unsecured claim (deficiency claim)." Class 2(c) consists solely of the unsecured claim of Auto–Owners in the amount of $1,146,716.70.[2] Claims in Class 2(b) and 2(c) are treated the same: each receives a pro-rata share from a fund totaling $274,952.20. The fund will be created from quarterly payments made by Debtors over a sixty month period. *See* Plan, pp. 6–8 (Docket No. 94).

■ Objectors contend that Debtors have failed to justify the separate classification of the claim of Auto–Owners in Class 2(c) from other unsecured claims in Class 2(b). In support of the proposed classification, Debtors observe that holders of large unsecured deficiency claims like Auto–Owners can effectively control a class of unsecured claims and block confirmation of a plan.[3] Debtors assert separate classification of such claims is necessary because otherwise, Debtors would be deprived of the opportunity to obtain an impaired accepting class and proceed to 'cramdown' under their plan.[4] As Debtors

---

1. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

2. Auto–Owners filed a proof of claim in the amount of $1,146,716.77 as an unsecured, non-priority claim based on an indemnity agreement. (Claim No. 12). While Debtors refer to this claim as a deficiency claim, they do not elaborate on such designation in terms of any alleged security interest. Auto–Owners voted against the plan as proposed.

3. By comparison, unsecured claims in Class 2(b) include United Rentals for $42,488.40, Granite State MGT & Resources for $18,082.50, American Express for $7,360.01, FIA Card for $6,200.12, and Sallie Mae for $3,377.19, for a total sum of $77,508.22.

4. Some courts reason that the relative size of a claim, and the fact that a large claim holder may thereby prevent a debtor from using the cramdown provisions, is embraced within the

acknowledge, under the case law that has developed such classification must be supported by a legitimate business or economic justification beyond the mere attempt to gerrymander a desired outcome.

Here, Debtors contend that separate classification of Auto–Owners' unsecured claim is warranted because the claim is not substantially similar to other unsecured claims given its legal character as a business debt, whereas the other claims are consumer debt. Further, Debtors argue that unlike the holders of those claims in Class 2(b), Auto–Owners benefits from certain guaranties, which may be taken into account under Section 1122(a). Regarding the latter contention and citing the decision of *Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*, 465 B.R. 525 (9th Cir. BAP 2012), Debtors assert that these guaranties distinguish the nature of Auto–Owner's claim as compared to other claimants in relation to the Debtors, and properly serve as grounds for separately classifying the claim. In *Loop 76*, the court determined that for purposes of examining the substantial similarity of claims under Section 1122(a), such analysis is not restricted to how the claim relates "to the assets of the debtor." 465 B.R. at 540, discussing *Steelease, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323 (9th Cir.1994). As that court reasoned, it is appropriate to consider whether a credi-

tor has access to means of possible recovery beyond a debtor's assets in regard to a proposed classification, as these sources could be an important, distinguishing feature when compared to the rights of other claimholders. 465 B.R. at 541.[5]

■ In response, Auto–Owners emphasizes that a number of circuit courts have held that a plan proponent must provide a legitimate reason for separately classifying similar claims, and it maintains Debtors have failed to do so through their proffered distinctions.[6] In his argument, the United States Trustee cites *Olympia & York Florida Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873 (11th Cir.1990) as providing governing standard herein. In *Holywell*, the Eleventh United States Circuit Court of Appeals did not directly confront the question of substantial similarity between unsecured deficiency claims and other unsecured claims, or when similar claims must be placed in the same class. *See In re Holley Garden Apartments, Ltd.*, 223 B.R. 822, 825 n. 3 (Bankr.M.D.Fla.1998); *see also In re SM 104 Ltd.*, 160 B.R. 202, 216 n. 30 (Bankr.S.D.Fla.1993). The circuit court did confirm, however, that even though a plan proponent holds "considerable discretion" in classifying claims, there are limits. 913 F.2d at 880. As this analysis has developed, to withstand chal-

underlying principles of the Code itself. Thus, any attempt to disenfranchise such a creditor through means of an artificial classification scheme solely to neutralize such position and manufacture an assenting, impaired class of claims for voting purposes is not in and of itself a legitimate use of the Code's reorganization provisions. *See e.g. Boston Post Rd. Ltd. P'ship v. Fed. Deposit Ins. Corp. (In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477 (2d Cir.1994), *cert. denied*, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995).

5. That court specifically noted, however, that it did not address the issue of whether the

debtor in that case offered a business or economic justification for the separate classification under challenge, and that it did not consider whether the classification was made in an effort to gerrymander an affirmative vote for the plan. 465 B.R. at 541 n. 11.

6. *See Boston Post Road*, 21 F.3d 477, 481; *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274 (5th Cir.1991), *cert. denied*, 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *see also In re Equitable Dev. Corp.*, 196 B.R. 889, 892 (Bankr.S.D.Ala.1996) (collecting case authority).

lenge, a plan proponent must show that the separately classified claims at issue are sufficiently dissimilar as bearing a legal difference, or prove an underlying business reason for the separation. Such showing is required to prevent abuse in attempting to manipulate class voting and secure acceptance of the plan. *See Holley Garden Apartments,* 223 B.R. at 825, citing *Holywell,* 913 F.2d at 880.

■ Applying this rule with respect to an examination of alleged dissimilarity, the Court agrees with the Objectors that Debtors have not adequately explained how claims placed in Class 2(b) are consumer debt as opposed to business debt.[7] Further, even if these claims are distinguishable along the lines suggested by Debtors, the Court concludes they have failed to present a reason for treating them differently on such basis under the plan, other than for structuring a desired outcome in the voting.[8]

The Court is also unpersuaded by Debtors' contention that Auto-Owners' right of recourse against non-debtor guaranties for satisfying its claim in this matter establishes a sufficient legal difference to support separation of its claim from those of other unsecured creditors. This is particularly so because the treatment of the two sub-classes is identical. Objectors argue that the existence of third-party sources for repaying a claim is simply not relevant to the issue of classification. Relying on the rationale that it is the nature of those

claims as asserted against a *debtor's* assets that is properly considered—not the nature of *other* claims or interests a claimant may hold, they insist this Court's inquiry is similarly constrained. *See In re AOV Indus., Inc.,* 792 F.2d 1140 (D.C.Cir.1986); *see also In re 18 RVC, LLC,* 485 B.R. 492 (Bankr.E.D.N.Y.2012).

This Court recognizes that the holding in *Loop 76* allowing for consideration of a guaranty has been criticized. The grounds of such critiques, however, generally focus on the failure to take into account additional factors such as the collectability of the guaranty, the existence of any nondebtor collateral, and presence of litigation that could affect that creditor's rights. *See In re 4ᵗʰ Street East Investors, Inc.,* 2012 WL 1745500 (Bankr.C.D.Cal. May 15, 2012). *Accord In re NNN Parkway 400 26, LLC,* 505 B.R. 277, 284 (Bankr.C.D.Cal.2014) (alternative means of meaningful recovery through solvent guarantor could be relevant). According to the court in *4ᵗʰ Street East,* for instance, in the absence of such facts, the deficiency claim there at issue was held insufficiently dissimilar from other unsecured claims to require separate classification, and was, in fact, substantially similar to such claims. Finding that no legitimate business reason had been presented to do so otherwise, the court concluded that the proposed classification amounted to an impermissible attempt to gerrymander a vote for confirmation. 2012 WL 1745500 at *8–9.

---

7. As noted by the U.S. Trustee, a number of unsecured creditors as scheduled are not included in the proposed plan, and on their face these claims appear to be in the nature of business-related debt. The Court further notes that Debtors list their occupations as property manager and doctor, and the plan includes an expense item for maintenance on rental properties. This case was converted from a case under Chapter 13 to a case under Chapter 11 on July 16, 2013.

8. Debtors have also not shown how the plan treats these claims differently in terms of such declared legal dissimilarity. In fact, each unsecured claim holder in Class 2, whose claim is not a "small" claim, will receive the same dividend of 21.99% on its claim as paid from the same "pot."

In this case, no facts have been provided establishing the viability or character of the subject guaranties. Further, the Court finds that Debtors have not shown any other substantive legal difference or factual basis for distinguishing between the unsecured claim of Auto–Owner and Debtors' other unsecured claims to support their separation under Class 2. Debtors have also failed to prove a business justification for the proposed classification. Such facts are necessary for the Court to balance a debtor's ability to obtain a confirmed cramdown plan and the interest of an affected creditor to cast a meaningful vote on the plan relative to other similar claimholders. The Court concludes, therefore, that the objection of Auto–Owners and the U.S. Trustee to confirmation of the plan is sustained as Debtors' plan improperly attempts to create an impaired assenting class for purposes of confirmation by separating Auto–Owner's claim in Class 2(c) from other unsecured claims in Class 2(b).

## II. Application of Absolute Priority Rule

■ Having concluded that confirmation must be denied on grounds of classification, the Court will also address the alternative argument contesting confirmation of the plan as offered by Objectors. Because the plan fails to satisfy Section 1129(a)(8) with respect to Auto–Owners, Debtors must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such impaired class that

has not accepted the plan. *See* 11 U.S.C. § 1129(b)(1). Under the fair and equitable test, a debtor must satisfy the "absolute priority rule" by providing for such dissenting class in full before a junior class, often an equity owner, receives or retains any property under the plan. For a class of unsecured claims, this test is codified in Section 1129(b)(2)(B)(ii).

Objectors argue that Debtors' cramdown plan violates the rule because they propose to retain their interest in prepetition business activities, rental properties, and other assets, while holders of unsecured claims will only receive a percentage of what they are owed. Debtors assert, however, that there is an issue in the case law regarding whether and to what extent this rule survived passage of BAPCPA with respect to debtors in Chapter 11 who are individuals. Specifically, the question centers on the proper treatment of a class of unsecured claims under Section 1129(b)(2)(B)(ii) and the interaction between the definition of property of the estate in Section 541 and Section 1115(a).

■ While a junior claimant may not retain any interest under a plan when holders of unsecured claims are not paid in full, Section 1129(b)(2)(B)(ii) provides an exception in reference to Section 1115.[9] In Chapter 11 cases where the debtor is an individual, Section 1115 expands property of the estate to include, "in addition to the property specified in section 541," newly acquired property and post-petition earnings of the debtor. *Compare* 11 U.S.C. § 541(a)(6). Under one line of authority,

---

9. Regarding the fair and equitable treatment of such claims, Section 1129(b)(2)(B)(ii) provides as follows:

    (B) With respect to a class of unsecured claims—

    . . .

    (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on

account of such junior claim or interest any property, *except that in a case which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.*

11 U.S.C. § 1129(b)(2)(B)(ii) (emphasis supplied).

property that a debtor may retain under Section 1129(b)(2)(B)(ii) is broadly construed based on a reading that Section 1115 *refers to* and *includes* property already defined in Section 541 to which, in effect, it succeeds. In other words, the absolute priority rule no longer applies in such cases and a debtor can retain property under a cramdown plan. *See Friedman v. P+P, LLC (In re Friedman),* 466 B.R. 471, 482 (9th Cir. BAP 2012); *see also In re O'Neal,* 490 B.R. 837 (Bankr.W.D.Ark. 2013); *In re Shat,* 424 B.R. 854 (Bankr. D.Nev.2010).

A competing line of authority, followed by four circuit courts of appeal, holds that the absolute priority rule still applies in a Chapter 11 case where the debtor is an individual. Construing the phrase "included in the estate" under Section 1129(b)(2)(B)(ii) to provide at most a limited exception to the rule, these courts conclude more narrowly that such a debtor can retain only *post-petition* property as *added to* the estate by Section 1115(a).[10] Property already included through Section 541 cannot be kept from the claims of senior claimholders. As part of their reasoning, these decisions state that a plain reading of the statutory language in question is indicative of the goal under BAPCPA to coordinate debtor reorganization cases under Chapter 11 with cases under Chapter 13, where debt eligibility limits could drive debtors into Chapter 11. Moreover, a broad reading of the exception would vitiate the absolute priority rule and findings of implicit repeals of longstanding principles are generally disfavored in the law. *See Lively,* 717 F.3d at 409–10; *see also In re Martin,* 497 B.R. 349, 356–59 (Bankr.M.D.Fla.2013).

Debtors assert that adoption of the narrow view will only increase the difficulty in confirming a plan of reorganization for individuals under Chapter 11. Objectors note that such arguments have been made and dismissed in other cases, and here, they similarly insist Debtors can still negotiate with their creditors or pay them more on their claims. Not only have Debtors failed to undertake such efforts in this case, they have also offered no valuation of their income-producing properties. *Accord Maharaj,* 681 F.3d at 575. As other courts have observed, however, several amendments to Chapter 11 under BAPCPA bear similarity to provisions in Chapter 13, which contains no absolute priority rule. Further, a narrow view of the exception would render any practical application of Section 1115 problematic given the added requirements of Section 1129(a)(15)(B) whereby debtors must commit five years of projected disposable income to their plans. *See O'Neal,* 490 B.R. at 850–51; *see also Friedman,* 466 B.R. at 483; *accord In re Lucarelli,* 517 B.R. 42, 52 (Bankr.D.Conn.2014).

This Court appreciates the practical issues created in adopting the narrow approach and finding that Debtors must comply with the absolute priority rule in their plan. The assessment of such concerns as expressed in decisions like *Lucarelli* is instructive. This Court also does not take lightly the prospect of a debtor attempting to reorganize, but otherwise effectively forced to liquidate a prepetition business interest that is a primary source of future income. *Accord Ice House America,* 751 F.3d at 739–40. Nevertheless, upon review of the argument and authority presented and the statutory language at hand, the Court concludes that the absolute pri-

---

10.  *See Ice House America, LLC v. Cardin,* 751 F.3d 734 (6th Cir.2014); *In re Lively,* 717 F.3d 406 (5th Cir.2013); *Dill Oil Co., LLC v.* *Stephens (In re Stephens),* 704 F.3d 1279 (10th Cir.2013); *In re Maharaj,* 681 F.3d 558 (4th Cir.2012).

ority rule remains viable under Section 1129(b)(2)(B)(ii), though subject to an exception limited in scope ·with respect to that specific property as described in Section 1115(a). In this Court's view, a natural reading of the operative terms in these provisions is that they refer to property over and above that described in, and already part of, the estate under Section 541, and that it is this specific additional property that a debtor who is an individual may retain in a cramdown plan consistent with the rule. *See Martin,* 497 B.R. at 356.

Based upon the above reasoning, the Court concludes that Objectors' position opposing confirmation on this basis is, therefore, also well-taken. As submitted, Debtors' plan is not confirmable because Auto–Owners, as an unsecured claimholder, is not receiving fair and equitable treatment under Section 1129(b)(2)(B)(ii). This holding follows inasmuch as Auto–Owners is not being paid in full on its claim and has not accepted the plan, while Debtors propose retaining their prepetition interests in property of the estate as defined in Section 541 beyond that described in Section 1115(a) and referenced in Section 1129(b)(2)(B)(ii), in violation of the absolute priority rule.

### III. Conclusion

·Accordingly, in view of the above discussion and the findings and conclusions as set forth herein regarding both grounds for objection as asserted by the Objectors, it is

**ORDERED** that the objections of Auto–Owners Insurance Company and the United States Trustee to confirmation of the Amended Proposed Combined Plan of Reorganization and Disclosure Statement of Debtors named above, as filed in this case on December 21, 2014 (Docket No. 94), be, and the same hereby are, **sustained;** and, it is

**FURTHER ORDERED** that confirmation of Debtors' Plan for the reasons stated be, and the same hereby is, **denied.**

The Clerk shall serve a copy of this Order upon Debtors, counsel for Debtors, counsel for Auto–Owners Insurance Company, the United States Trustee, and all creditors and parties in interest herein.

**IT IS ORDERED**